2019 IL App (3d) 170108

Opinion filed July 26, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0108 Circuit No. 15-CF-471 |
| VALERIE A. PARKER, | ) ) ) | Honorable Richard McCoy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Carter specially concurred, with opinion.
Justice Holdridge also specially concurred, with opinion.

**OPINION**

¶ 1     Defendant, Valerie A. Parker, appeals her conviction for aggravated driving under the influence of alcohol (DUI). Specifically, defendant argues that second-prong plain error occurred "where an Assistant State's Attorney and two court bailiffs were present when the jury viewed evidence during deliberations outside of the presence of the parties and the court." We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The State charged defendant with aggravated DUI (625 ILCS 5/11-501(a) (West 2014)) in that she drove a motor vehicle while under the influence of alcohol and had at least two prior

convictions for DUI. The State also charged defendant with driving while her license was revoked (*id.* § 6-303(a)).

¶ 4        Defendant pled guilty to driving while her license was revoked, and the matter proceeded to a jury trial on the charge of aggravated DUI. During the trial, Assistant State's Attorney Thomas Dennis appeared on behalf of the State.

¶ 5        During jury deliberations, the jury requested to watch a DVD video recording that had previously been played during the trial. The following exchange occurred:

"THE COURT: Okay. It's about 9:15 ***. [Defendant] appears personally today with Mr. Bembenek, her lawyer. Mr. Dennis is the Assistant State's Attorney. The jury has resumed deliberations, and they have given us the question. May we please see the video. Mr. Dennis, what's your position on that?

MR. DENNIS: I believe that the jury should be able to review the video. It was admitted into evidence and published to the jury. I do believe they should be able to review that.

THE COURT: Mr. Bembenek?

MR. BEMBENEK: I have no objection to the jury's request, Your Honor.

THE COURT: Okay. How are we going to get them to get it set up back there?

MR. DENNIS: I believe the laptop is still set up, Your Honor, but the DVD is in the court file.

THE COURT: Here's the DVD. That's what I mean. Who's going to go show them how to do it?

THE CLERK: I think [Assistant State's Attorney Mara Mishler] could, since she was not really involved in the—

MS. MISHLER: And I would just say, both bailiffs need to be present while I'm in there. Insurance that I'm not a crook.

THE COURT: That's fine. Mara Mishler will, unless somebody else has a better idea, under the watchful eye of the bailiffs, go get it set up for them in the jury room. Anything else to place of record?

MR. DENNIS: No, Your Honor.

MR. BEMBENEK: No, Your Honor."

¶ 6 At approximately 9:50 a.m., the jury submitted another question. The jury asked why a video of defendant exiting a car was unavailable. On the agreement of the parties, the court submitted a written answer to the jury stating: "The evidence received by the Court has concluded and the jury should consider the evidence so received ***."

¶ 7 The jury found defendant guilty of aggravated DUI. The circuit court sentenced defendant to an agreed sentence of 24 months' probation and 90 days' incarceration in the county jail on the charge of aggravated DUI and 10 days' incarceration in the county jail on the charge of driving while her license was revoked.

¶ 8                                        II. ANALYSIS

¶ 9 Defendant argues that second-prong plain error occurred "where an Assistant State's Attorney and two court bailiffs were present when the jury viewed evidence during deliberations outside of the presence of the parties and the court." Defendant contends that the presence of

- 3 -

Assistant State's Attorney Mishler and the two bailiffs had a chilling effect on the jurors while they viewed the DVD during deliberations. Defendant also argues that their presence "prevented jurors from speaking freely about the evidence." We find that defendant has not shown that the procedure employed by the court constituted clear error. Alternatively, even if we were to find that the procedure constituted error, it would not rise to the level of plain error.

¶ 10    Defendant concedes that she forfeited this issue by failing to object at trial or raise the issue in a posttrial motion. However, defendant requests that we review the issue under the second prong of the plain error doctrine. Under the second prong of the plain error doctrine, a reviewing court may consider an unpreserved error when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The burden of persuasion remains with the defendant under both prongs of the plain error test. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). The first step in plain error review is determining whether a clear or obvious error occurred. *Id.*

¶ 11    "It is a basic principle of our justice system that jury deliberations shall remain private and secret." *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 17. "The primary purpose of this honored rule is to protect the jurors from improper influence." *Id.* The presence of a third party during jury deliberations impinges on the privacy and secrecy of deliberations, but it does not warrant reversal if no harm resulted from the intrusion. *Id.*

¶ 12    Here, the crux of defendant's argument is that the presence of Mishler and the bailiffs *during the jury's review of evidence* constituted clear error. However, the record does not establish that Mishler and the bailiffs remained in the jury room while the jury viewed the DVD. Rather, the court directed Mishler to deliver the DVD to the jury room and "get it set up for

them." The court did not tell Mishler or the bailiffs to remain in the jury room while the jury viewed the DVD, and nothing in the record indicates that they remained in the jury room. We construe this ambiguity in the record against defendant. *People v. Hunt*, 234 Ill. 2d 49, 58 (2009) ("The appellant bears the burden of presenting an adequate record to support its claim of error. [Citation.] Any doubts stemming from an inadequate record will be construed against the appellant."). We do not find that Mishler and the bailiffs entering the jury room to merely set up the DVD on the computer constituted clear error.

¶ 13 Even if we were to find that error occurred when the circuit court allowed Mishler and the two bailiffs to enter the jury room and set up the DVD, this would not rise to the level of second-prong plain error. Any error that may have resulted from Mishler's and the bailiffs' brief entry into the jury room for the limited purpose of setting up the DVD on the computer was not "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Piatkowski*, 225 Ill. 2d at 565.

¶ 14 In reaching our holding, we reject defendant's reliance on our prior decision in *People v. Henderson*, 2017 IL App (3d) 150550. In *Henderson*, the jury requested to view video and audio evidence during deliberations. *Id.* ¶ 27. The circuit court discussed the request with the jury outside the presence of the State and the defense. *Id.* The record in *Henderson* showed that the video and audio recordings were played in the presence of an employee of the state's attorney's office and a bailiff. *Id.* ¶¶ 27-28. The court told the jury to tell the employee what they wanted to watch and that the court would keep the employee there as long as the jury wanted to view the evidence. *Id.* ¶ 27. The court did not advise the parties of the jury's request or the procedure the court had employed until after the jury had reached a verdict. *Id.* ¶ 28. We found that the

procedure for viewing the audio and video recordings employed in *Henderson* constituted second-prong plain error. *Id.* ¶ 48. We reasoned:

> "[W]e find that allowing a representative of the State to be in the room while the jury reviews evidence, without any prior notice to defendant, to be so far beyond the pale of what is expected in a criminal jury trial as to 'erode the integrity of the judicial process.' " *Id.* (quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)).

¶ 15 The instant case is distinguishable from *Henderson* in two significant respects. First, as we have discussed, the record in this case does not establish that Mishler and the bailiffs remained in the jury's presence while the jury watched the DVD. Second, unlike in *Henderson*, both parties were present while the court discussed the jury's request and the court's proposed procedure of having Mishler set up the DVD in the jury room. We note that the State argues that defendant invited the alleged error by failing to object to the court's proposed procedure of having Mishler enter the jury room or propose a different procedure where the court gave defense counsel the opportunity to do so. However, because we have found that defendant cannot establish error, let alone a claim of second-prong plain error, we do not address the State's invited error argument.

¶ 16                                    III. CONCLUSION

¶ 17 For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

¶ 18 Affirmed.

¶ 19 JUSTICE CARTER, specially concurring:

¶ 20    I agree with the majority that defendant has failed to establish that either error or plain error occurred in this case. In determining that defendant failed to establish error, the lead opinion relies on the fact that the record does not show whether Mishler and the bailiffs remained in the jury room while the jury viewed the DVD. I write separately because I would find that no error occurred even if Mishler and the bailiffs had remained in the jury room while the jury viewed the DVD absent a showing of actual prejudice. See *People v. McLaurin*, 235 Ill. 2d 478, 497 (2009) ("[T]he key question in determining whether an 'intrusion' into the jury room constitutes error is whether the defendant was prejudiced by the intrusion."); *Johnson*, 2015 IL App (3d) 130610, ¶ 19 ("[W]e review outside jury intrusions for prejudicial impact.").

¶ 21    The issue of whether evidentiary items should be taken to jury room during deliberations is a matter within the discretion of the trial court, and the trial court's decision on the matter is not reversed absent an abuse of discretion to the prejudice of the defendant. *People v. Williams*, 97 Ill. 2d 252, 292 (1983). Similarly, the mode and manner in which a trial court allows a jury to review a piece of evidence during jury deliberations falls within the scope of the court's inherent authority to manage its courtroom and is a matter of the court's discretion. *People v. McKinley*, 2017 IL App (3d) 140752, ¶ 22 (opinion of Carter, J.); see also *People v. Lewis*, 2019 IL App (4th) 150637-B, ¶ 97 (holding that where a deliberating jury requests to have an audio or video recording played again, the trial court has discretion to either send the evidence to the jury room or bring the jury into the courtroom to play the recording); *People v. Rouse*, 2014 IL App (1st) 121462, ¶ 78 (holding that it was within the trial court's discretion to allow the jury to view a video recording in the presence of both parties and the judge).

¶ 22    Here, defendant essentially argues that the mode and manner in which the trial court allowed the jury to view the DVD constituted error because Mishler's presence had a chilling

effect on jury deliberations. Defendant's claim that the jury was exposed to improper information or influence is comparable to the body of law regarding impeachment of a jury verdict. A jury verdict may not be impeached by an affidavit or testimony from a juror regarding the motive, method, or process by which the jury reached its verdict. See, *e.g.*, *People v. Hobley*, 182 Ill. 2d 404, 457 (1998). However, a jury verdict may be impeached based on evidence of improper extraneous influences on the jury. *Id.* at 458. Where a defendant seeks to impeach a jury verdict based on an outside influence or communication, reversal is not warranted unless the defendant was prejudiced. See *id.*; *People v. Harris*, 123 Ill. 2d 113, 132 (1988); *People v. Holmes*, 69 Ill. 2d 507, 514-19 (1978); *People v. Willmer*, 396 Ill. App. 3d 175, 181 (2009); *People v. Collins*, 351 Ill. App. 3d 175, 179 (2004); see also *People v. Kuntu*, 188 Ill. 2d 157, 161-62 (1999) (holding that a letter sent from a juror to a state's attorney after the trial indicating that the juror had a personal relationship with the state's attorney was not conclusive evidence that the defendant's right to a fair trial had been prejudiced); *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966) (*per curiam*) (holding that reversal was warranted where a bailiff told jurors that the defendant was guilty because the bailiff's statements were prejudicial and violated the defendant's constitutional rights).

¶ 23    Generally, a rebuttable presumption of prejudice arises when a defendant shows that a third party has communicated with a juror about a matter pending before the jury or that the jury has been exposed to improper extraneous information that relates directly to something at issue in the case that may have influenced the verdict. *Harris*, 123 Ill. 2d at 132; *Collins*, 351 Ill. App. 3d at 179-80; *Willmer*, 396 Ill. App. 3d at 181. While allegations of prejudicial outside influences are sufficient to raise a presumption of prejudice and shift the burden to the State, allegations that a juror "may have been exposed to extraneous information of an unknown

nature" are not sufficient to raise a presumption of prejudice. *People v. Williams*, 209 Ill. 2d 227, 242 (2004). When a defendant has made a showing sufficient to raise a presumption of prejudice, the State may rebut the presumption by showing that the improper communication or extraneous information was harmless. *Harris*, 123 Ill. 2d at 132; *Hobley*, 182 Ill. 2d at 462; *Collins*, 351 Ill. App. 3d at 179-80. However, when the issue is unpreserved—as in the instant case—the burden of establishing prejudice remains on the defendant and does not shift to the State. *McLaurin*, 235 Ill. 2d at 497-98; see also *United States v. Olano*, 507 U.S. 725, 740-41 (1993).

¶ 24    Applying the above principles to the instant case, the defendant has not shown that Mishler or the bailiffs engaged in a prejudicial communication with any juror about a matter pending before the jury or that improper extraneous information reached the jury. At most, defendant has shown that the procedure the court employed to play the DVD during jury deliberations created a situation where it was possible for Mishler or the bailiffs to have an improper communication with the jury. Even if we assume that Mishler and the bailiffs remained in the jury room while the jury viewed the DVD, the mere possibility of an improper communication is insufficient to show that defendant was prejudiced. As such, I would find that defendant has not shown that the court abused its discretion by allowing Mishler to set up the DVD in the jury room.

¶ 25    I recognize that I concurred in the judgment and opinion in *Henderson*, 2017 IL App (3d) 150550, ¶ 46, in which we held that error occurred where the trial court allowed the jury to review evidence in the presence of an employee of the state's attorney's office and a court bailiff. *Id.* Upon further consideration of this issue, I do not believe that the presence of the employee of the state's attorney's office and the bailiffs, without more, showed that defendant was prejudiced. However, I would still find that error occurred in *Henderson* because the trial

court failed to consult the parties regarding the jury's request to review the evidence or the mode and manner in which the court would allow the evidence to be reviewed.

¶ 26    JUSTICE HOLDRIDGE, specially concurring:

¶ 27    I join in the majority's judgment and in Justice Schmidt's analysis. However, I disagree with the analysis employed by Justice Carter in certain respects. I write separately to address that issue.

¶ 28    Justice Carter would find that no error occurred in this case "even if [Assistant State's Attorney] Mishler and the bailiffs had remained in the jury room while the jury viewed the DVD absent a showing of actual prejudice." *Supra* ¶ 20. Justice Carter concludes that a defendant could not show prejudice under these circumstances unless he could show that "Mishler or the bailiffs engaged in a prejudicial communication with any juror about a matter pending before the jury or that improper extraneous information reached the jury." *Supra* ¶ 24. The defendant has not made such a showing here. Thus, Justice Carter concludes that the defendant could not possibly demonstrate prejudicial error because, "[e]ven if we assume that Mishler and the bailiffs remained in the jury room while the jury viewed the DVD, the mere possibility of an improper communication is insufficient to show that defendant was prejudiced." *Supra* ¶ 24.

¶ 29    I disagree. The presence of a prosecutor, a trial judge, or other interested third parties during jury deliberations is presumptively prejudicial because it inhibits the jurors' deliberations, regardless of whether any of the third parties improperly communicate with the jury. *People v. Hollahan*, 2019 IL App (3d) 150556, ¶¶ 20-30. It is a basic principle of our justice system that jury deliberations shall remain private and secret. *Id.* ¶ 20; *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 17. The primary purpose of this rule is to protect the jurors from improper influence. *United States v. Olano*, 507 U.S. 725, 737-38 (1993); *Johnson*, 2015 IL App (3d) 130610, ¶ 17.

- 10 -

Accordingly, although the trial court has the discretion to determine whether to grant a jury's request to review evidence and the manner in which such evidence may be viewed by the jury (*People v. McKinley*, 2017 IL App (3d) 140752, ¶ 16 (opinion of Carter, J.)), a trial court abuses its discretion if it allows the jury to review evidence in a manner that results in an improper influence upon the jury's deliberations (*Hollahan*, 2019 IL App (3d) 150556, ¶ 20). Courts review an improper intrusion into jury deliberations for its prejudicial impact (*Johnson*, 2015 IL App (3d) 130610, ¶¶ 17-19) and will reverse only if the intrusion "affect[ed] the jury's deliberations and thereby its verdict" (*Olano*, 507 U.S. at 739). "An improper intrusion upon jury deliberations by a third party is prejudicial when it impedes or inhibits the jurors' deliberations." *Hollahan*, 2019 IL App (3d) 150556, ¶ 20; see also *Olano*, 507 U.S. at 739 (noting that the presence of alternate jurors in the jury room during juror deliberations could prejudice the defendant if the presence of the alternates "exert[s] a 'chilling' effect" on the jurors or " 'operate[s] as a restraint upon the regular jurors' freedom of expression and action' ").

¶ 30        The mere presence of the trial court, the parties, or their counsel (including the prosecutor) during jury deliberations presumptively inhibits the jurors' deliberations and restrains their freedom of expression and action. *Hollahan*, 2019 IL App (3d) 150556, ¶ 21. " '[I]t is hard to imagine a more intrusive, more chilling presence in the deliberations than the opposing parties—the defendant with his attorney and the State in the person of the State's Attorney—and the trial judge.' " *Id.* (quoting *Johnson*, 2015 IL App (3d) 130610, ¶ 49 (McDade, P.J., dissenting)). "The state's attorney, the defendant, and the defendant's counsel each have a direct interest in the outcome of the litigation." *Id.* The presence of these parties during jury deliberations "is inherently intimidating to jurors and would almost certainly have inhibited their

deliberations" because "[i]t is extremely unlikely that any juror would have felt free to discuss" the evidence in the presence of these parties. *Id.*

¶ 31    I agree with Justice Carter that an intrusion into a jury's deliberations by nonjurors constitutes reversible error only if the defendant is prejudiced by the intrusion. See *supra* ¶ 20. However, Justice Carter asserts that a defendant may establish such prejudice only by showing either that (1) one of the nonjurors that was present during the jury's deliberations "engaged in a prejudicial communication with [a] juror about a matter pending before the jury" or that (2) "improper extraneous information reached the jury." *Supra* ¶ 24. I disagree with that assertion. As shown above, the *mere presence* of a state's attorney or some other interested party during jury deliberations improperly intrudes upon the privacy of jury deliberations and has an inherently intimidating and inhibiting effect upon such deliberations. *Hollahan*, 2019 IL App (3d) 150556, ¶ 30. "Such intrusions on the jurors' ability to freely discuss and debate the evidence should be deemed presumptively prejudicial (see *Olano*, 507 U.S. at 739), regardless of whether they involve any express communications or the transmission of 'extraneous information.' " *Id.*

¶ 32    As Justice Schmidt notes, the defendant in this case has failed to establish that he was prejudiced by the brief presence of Mishler and the bailiffs in the jury room because the record does not establish that either Mishler or the bailiffs remained in the jury room while the jury viewed the DVD or while the jury considered or discussed any other evidence. In other words, the defendant does not and cannot establish that any nonjurors were present during the jurors' actual deliberations. For that reason, I join the majority's judgment. However, unlike Justice Carter, I would have reversed the defendant's conviction if the defendant had demonstrated that

Mishler was present during the jury's viewing of the DVD or during its discussion or reviewing of any evidence.