2020 IL App (1st) 171899-U

THIRD DIVISION
September 30, 2020

No. 1-17-1899

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 93 CR 2873 |
| | ) | |
| EDWARD HANKS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1     *Held*:    The judgment of the circuit court of Cook County granting the State's motion to dismiss defendant's postconviction petition is reversed; defendant made a substantial showing of the violation of his due process right to a hearing for the purpose of giving defendant the opportunity to prove a juror in his trial was not impartial where defendant raised specific, detailed, nonconjectural evidence of juror partiality.

¶ 2     Following a jury trial, the circuit court of Cook County convicted defendant, Edward Hanks, of aggravated criminal sexual assault and armed robbery. Defendant filed a petition for postconviction relief, which the trial court dismissed at the second stage of postconviction proceedings. For the following reasons, the trial court's order granting the State's motion to dismiss defendant's petition for postconviction relief is reversed. Defendant made a substantial showing of a violation of his due process right to a hearing on his specific, detailed, and

nonconjectural claim a juror in his trial had information the trial court had excluded from evidence prior to trial.

¶ 3     Owing to the excessive delay in bringing this matter to first, a second-stage postconviction hearing, and now a third-stage evidentiary hearing, in the exercise of this court's authority pursuant to Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1970), we retain jurisdiction of this matter; we remand the matter to the trial court to conduct a third-stage evidentiary hearing; we order the trial court, the attorneys on appeal, and the trial court attorneys to expedite third-stage proceedings in this case and to *complete* those proceedings—including the trial court's order—within 180 days of the date of this order and mandate; and we issue the mandate *instanter* without prejudice to the right to file a petition for rehearing.

¶ 4                                  BACKGROUND

¶ 5     This appeal arises from defendant's petition for postconviction relief.  Defendant initially filed a petition for postconviction relief *pro se*, and the trial court summarily dismissed it. Defendant appealed the summary dismissal of his initial *pro se* postconviction petition and this court reversed the trial court's judgment.  The case returned to the trial court where the court appointed counsel to represent defendant and later allowed the State to file a motion to dismiss the petition.  The trial court granted the State's motion to dismiss, and defendant now appeals that judgment.

¶ 6     This court has previously recounted and discussed the evidence leading to defendant's conviction and history of this case in affirming defendant's conviction on direct appeal (*People v. Hanks*, 307 Ill. App. 3d 1069 (1999) (*Hanks I*)) and in reversing the trial court's summary dismissal of defendant's *pro se* petition for postconviction relief (*People v. Hanks*, 335 Ill. App.

3d 894 (2002) (*Hanks II*)).  For this appeal, we will state only that information necessary to an understanding of the issue and our resolution thereof.

¶ 7    Defendant, Edward Hanks, was convicted of aggravated criminal sexual assault and armed robbery of the assault victim at a trial held in 1997.  Defendant had been previously convicted in 1984 of raping a guest at the hotel at which he worked.  The 1984 conviction is an essential element of this appeal.  At the trial in this case the State also adduced other crimes evidence of two aggravated criminal sexual assaults defendant committed less than a month prior to the one leading to the conviction in this case, one of which was against a minor.  However, in response to defendant's motion *in limine*, the trial court blocked the jury from hearing the nature of the charge leading to the conviction in 1984, ruling that should defendant testify at the trial the jury could be informed only that defendant had a felony conviction from 1984 but the jury would not be allowed to hear it was a rape conviction.

¶ 8    At defendant's trial, after the jury convicted defendant but before sentencing, defendant informed his trial counsel that one of defendant's jurors had worked with defendant in 1984 in the housekeeping department of a chain hotel.  Defendant alleged that since the 1984 rape occurred at their workplace, the juror may have been aware of the nature of defendant's 1984 conviction.  The defense attorney informed the trial court and also informed the court defendant had not recognized the juror until defendant's brother, who worked at the same chain hotel, told defendant who the juror was.  Thirteen years had passed between the 1984 rape and the trial of this matter—defendant's brother also failed to recognize the juror sooner.

¶ 9    The trial court instructed the State to retrieve the juror's information card so it could determine what it said about her workplace in 1984.  The State, acting without instruction by the court or consultation with the defense, also spoke to the juror with a state's attorney's office

investigator. When the proceedings resumed before the trial court the State informed the court of that conversation and stated that one of the investigators wrote a "report" that was tendered to defendant's attorney (the court did not receive a copy). The State represented to the court that during their conversation, as memorialized in the report, the State asked the juror if the juror recognized defendant and the juror responded "No." The State asked the juror if she recognized anyone else in the case and if she had ever personally worked with defendant. The juror responded "No" to both of those questions. The State also represented to the court that the juror "indicated *** she did not know that the defendant, Mr. Hanks, was the individual who had been arrested at the [workplace] for that previous offense" (implying that at minimum she was aware that an employee was arrested for raping a customer of the business where she worked). The State also informed the court that it had "pull[ed] [its] trial book *** used during the selection process" and that the court had at that time, before her selection as a juror, questioned the juror as to her place and duration of employment and the juror "did indicate" that she worked at that particular location for 22 years.

¶ 10     The trial court then stated, in part, that it seemed it was known where the juror worked prior to her selection and noted the juror indicated under oath that she did not know defendant and could give defendant a fair trial. The court further stated that if "defendant *** had some difficulty with that particular juror as far as her employment goes, he cannot remain mute on the subject, *** he has a duty to come forward with the information." The court continued: "This is being brought to my attention for the first time today that possibly they worked together at the same place at the same time; however, he has a duty to make that known at the time and not after the trial has been completed." The court found it was clear the juror worked at their workplace and that defendant knew that fact. The court found defendant "had a duty to bring that up prior

to the jury being selected." The court ruled that taking into consideration defendant's failure to bring up the juror's employment prior to her selection and lack of objection to her as a juror, and "taking *** into consideration *** what the state's attorney has just stated [(about the *sua sponte* 'interview' of the juror"),] and I have not seen the report, but accepting that, I don't see where there *** where that in any way would affect the verdict that was returned in this case." The matter then immediately proceeded with defendant's Motion for a New Trial.

¶ 11 The trial court did not act on the matter concerning the juror further, proceeded to deny defendant's motion for a new trial, and sentenced defendant for the convictions.

¶ 12 In 2000 defendant filed a *pro se* petition for postconviction relief.

¶ 13 As stated above, this court reversed the trial court's judgment summarily dismissing defendant's initial *pro se* petition for postconviction relief. For purposes of this appeal we note only that defendant's *pro se* petition alleged the juror's "ability to serve as a fair and impartial juror was compromised." *Hanks II*, 335 Ill. App. 3d at 898. This court responded to the State's argument the allegation in the petition was not support by an affidavit by defendant's brother. *Id.* This court found the absence of defendant's brother's affidavit was not fatal to the petition because "the contents of the court file and the exhibits allow for objective and independent corroboration of the allegations." (Internal quotation marks and citation omitted.) *Id.* at 899. This court then responded to the State's argument the matter could have been brought on direct appeal and that the failure to do so resulted in waiver of the issue. *Id.* This court found that the waiver rule was relaxed where "the alleged waiver stems from a claim of ineffective assistance of appellate counsel" and turned to that question. *Id.* at 899-900. This court agreed that "had appellate counsel raised this issue on direct appeal, there is a reasonable likelihood that the matter would have been remanded for an evidentiary hearing." *Id.* at 900.

¶ 14    In *Hanks II*, after reviewing the authorities as stated in the amended postconviction petition, this court ruled as follows:

> "The trial court did not hold an evidentiary hearing in the instant case to determine the partiality of [the] juror ***. There was no determination made as to whether [the] juror *** answered falsely on *voir dire* as she never provided a sworn statement nor was she subject to any adversarial testing. [Citation.] Accordingly, we find that petitioner has stated a 'gist' of a meritorious claim with respect to his contention that appellate counsel was ineffective for failing to raise the issue that defendant was denied a fair and impartial trial on appeal. Appellate counsel's representation fell below the objective standard of reasonableness, and we cannot say that the failure to raise this issue was not outcome determinative. [Citation.] Therefore, the trial court erred in summarily dismissing petitioner's petition." *Hanks II*, 335 Ill. App. 3d at 903.

¶ 15    On remand following this court's decision in *Hanks II*, the trial court appointed counsel to represent defendant in postconviction proceedings. In October 2016 counsel filed defendant's amended petition for postconviction relief.[1] The amended petition argued defendant was denied his due process right to a fair and impartial jury "when the trial judge failed to hold an evidentiary hearing when the potential bias of [the juror] was raised in court by trial counsel." The petition stated that defendant's attorney informed the trial court about the information defendant gave her—that one of the jurors had worked with defendant—and requested guidance

---

[1]    Although much maligned by the State, we find the delay between postconviction counsel's appointment to represent defendant and the filing of the amended petition are not germane to the issues in this appeal. Nonetheless, we have taken note of the delays in these proceedings.

from the court. The court questioned defendant, who informed the court he did not recognize the juror until his brother recognized the juror and told defendant about her. Defendant attached his brother's affidavit to the amended petition.

¶ 16    Defendant's amended petition for postconviction relief noted that "[i]n remanding this case *** for Stage 2 post-conviction proceedings [this court] cited several cases where evidentiary hearings had been held *** to determine whether or not a juror had lied during *voir dire*." The amended petition noted this court's partial reliance on the fact the trial court in this case failed to depose the juror and that her "interview" with the state's attorney investigator "was not a sworn statement [and was not subject to cross-examination,] nor had the trial court conducted an evidentiary hearing." Defendant also responded to the trial court's finding defendant knew the juror's place of employment and had a duty to raise concerns about it sooner. The amended petition asserted the juror's card listed her exact place of employment but "when she was questioned, she only stated she worked for [the company—a hotel chain with multiple locations.]" The amended petition argued defendant was entitled to an evidentiary hearing because "the trial judge was under an obligation to question [the juror] under oath as to her bias when the issue was brought to his attention."

¶ 17    The amended petition also contained a claim defendant's appellate counsel was ineffective in failing to raise this issue on direct appeal.

¶ 18    The State filed a motion to dismiss the amended petition. The State's motion to dismiss argued defendant cannot demonstrate either that the record reflects the juror's false testimony or that the trial court erred in its inquiry. The motion noted the court questioned the jurors as to whether anyone knew defendant and also claimed the State submitted the investigator's "report" to be included in the record and the report corroborates the juror's statement upon questioning by

the court that she did not know defendant, thus the "record fails to demonstrate in any way that [the juror] lied." The State also argued defendant's trial attorney preserved the issue by raising it posttrial but failed to demonstrate defendant was prejudiced by subpoenaing the juror or providing an affidavit. On the contrary, the trial court heard defendant's allegations, "was read the contents of the investigative report and reviewed the juror card." The State argued the trial court's "inquiry determined that no prejudice had occurred." The State's motion argued defendant's appellate counsel did not have a meritorious claim because the law did not mandate the trial court conduct a hearing, the record does not support the allegation the juror testified falsely, and nothing in the record indicates the trial court abused its discretion. Rather, the trial court did conduct an "inquiry" and determined defendant failed to show he was prejudiced. Finally, the State argued that this court's judgment in *Hanks II* found only the gist of a claim and made no factual determinations.

¶ 19    The trial court granted the State's motion to dismiss the amended postconviction petition.

¶ 20    This appeal followed.

¶ 21                                 ANALYSIS

¶ 22    Defendant's amended petition asserts the juror in question was not impartial based on her knowledge of defendant's prior offense. Defendant did not testify; therefore the evidence of his prior conviction was not admissible at trial. See generally *People v. Catchings*, 2018 IL App (3d) 160186 (applying "mere-fact rule" of impeachment of testifying defendant with evidence of other crimes); *People v. Salem*, 2016 IL App (3d) 120390, ¶¶ 52-54 (discussing admissibility of other crimes to show MIMIC).

¶ 23    In the earlier appeal of the dismissal of defendant's postconviction petition alleging juror bias, this Court reversed and remanded for further proceedings, holding:

"Petitioner argues that appellate counsel's failure to raise this issue on direct appeal was objectively unreasonable where the record demonstrated that one of the jurors who sat on petitioner's jury may have possessed exceptionally prejudicial information concerning petitioner's prior conviction for rape. Additionally, had appellate counsel raised this issue on direct appeal, there is a reasonable likelihood that the matter would have been remanded for an evidentiary hearing. We agree." *Hanks II*, 335 Ill. App. 3d at 900.

¶ 24 After remand, the trial court dismissed defendant's amended petition, again without holding an evidentiary hearing and defendant appealed.

¶ 25 The Post-Conviction Hearing Act (Act) provides a mechanism for individuals convicted of crimes to mount a collateral attack on their conviction or sentence by asserting that the conviction or sentence resulted from a substantial denial of their constitutional rights. *People v. Simms*, 2020 IL App (1st) 161067, ¶ 21. The Act creates a three-stage process for obtaining postconviction relief. *People v. Logan*, 2011 IL App (1st) 093582, ¶ 30. "During the second stage [of postconviction proceedings] the petitioner bears the burden of making a substantial showing of a constitutional violation." *People v. Domagala*, 2013 IL 113688, ¶ 35. "When reviewing a motion to dismiss at the second stage of the proceedings, we accept as true all factual allegations that are not positively rebutted by the record." *People v. Lander*, 215 Ill. 2d 577, 586 (2005). "As defendant's petition was denied at the second stage of postconviction proceedings, our review is *de novo*." *People v. Garcia*, 405 Ill. App. 3d 608, 614 (2010). "*De novo* consideration in the case at bar means that we perform the same analysis that the trial judge would have performed if we had been sitting during the second-stage dismissal hearing. [Citations.]" *People v. Rodriguez*, 2018 IL App (1st) 160030, ¶ 45.

¶ 26    The issue in this appeal is not whether defendant has made a substantial showing that his constitutional rights were violated because the trial court allowed an impartial juror to decide his case—although that issue may arise later.  The only issues now are whether due process required the trial court to conduct a hearing to determine whether the juror was biased against defendant and whether appellate counsel was deficient for not raising the issue.  Because defendant came forward with specific, detailed, nonconjectural evidence of partiality, the trial court was required to conduct a hearing, during which the juror could be cross-examined, to determine what she knew and how it affected her.  At this stage of proceedings defendant is charged only with making a substantial showing he did come forward with the required specific, detailed, nonconjectural evidence; which he has done.

¶ 27    The State argues "the question in this collateral appeal is not simply whether a more thorough evidentiary hearing *** should have taken place."  The State claims defendant had to obtain "some modicum of evidence to suggest that [the] juror *** knew him and harbored a bias against him."  We disagree—whether an evidentiary hearing should have taken place is in fact precisely the question raised in this appeal.

>    "At this stage, the trial court accepts as true all well-pled facts that are not positively rebutted by the record.  [Citations.]  There is no fact finding or credibility determination at this stage.  [Citations.]  As a result, the State's motion to dismiss raises solely the issue of whether the petition is sufficient as a matter of law.  [Citations.]  The question before the court is whether the petition's well-pled allegations, 'if proven at an evidentiary hearing,' would entitle the defendant to relief.  [Citation.]" *Rodriguez*, 2018 IL App (1st) 160030, ¶ 45.

See also *Domagala*, 2013 IL 113688, ¶ 35 ("In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle [the] petitioner to relief.").

¶ 28   Defendant argues the trial court denied him his right to due process when it failed to conduct an inquiry into the juror's knowledge of defendant and his prior offense, because due process requires "a hearing in which the defendant has the opportunity to prove actual bias" (*Smith v. Phillips*, 455 U.S. 209, 215 (1982)) when a defendant alleges juror partiality.  Based on our *de novo* review of the petition we find defendant made a substantial showing of a constitutional violation.  That is, defendant has made a substantial showing had appellate counsel raised this issue in his direct appeal there is a reasonable likelihood this court would have remanded the case for an evidentiary hearing.  Further, because of appellate counsel's deficient performance, he was denied due process because there was no evidentiary hearing held and defendant had no opportunity to prove actual juror bias.

> "The right to a trial by an impartial tribunal is so basic that a violation of the right requires a reversal.  [Citations.]  The right to a jury trial guarantees to one accused of a crime a fair trial by a panel of impartial jurors.  The failure to accord an accused a fair hearing violates even the minimal standards of due process.  [Citation.]" *People v. Cole*, 54 Ill. 2d 401, 411 (1973).

¶ 29   In *Smith*, a juror submitted, during the defendant's trial, an application to be a major felony investigator in the prosecutor's office. *Smith*, 455 U.S. at 212.  The United States supreme court held that the application itself required a posttrial hearing on juror bias. *Id.* at 221.  The Court wrote that it "has long held that the remedy for allegations of juror partiality is a

hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215. The Court described the required hearing as one in which the trial judge was "to 'determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a *hearing* with all interested parties permitted to participate.' [Citation.]" (Emphasis in original.) *Id.* at 216, quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954). The *Smith* Court also noted its earlier holding that the "[p]reservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury." (Internal quotation marks and citations omitted.) *Id.*, citing *Dennis v. United States*, 339 U.S. 162, 171-72 (1950).

¶ 30    In *People v. Towns*, 157 Ill. 2d 90, 102 (1993), our supreme court held that "[w]here a defendant does not learn of facts which might support a finding of partiality by a juror until after a verdict, a post-trial evidentiary hearing may be necessary." *Towns*, 157 Ill. 2d at 102. "The defendant *** bears the burden to introduce and offer specific, detailed and nonconjectural evidence in support of his position. In the absence of such evidence, an evidentiary hearing is not warranted. [Citation.]" *Id.*, citing *People v. Witte*, 115 Ill. App. 3d 20, 30 (1983). In *Towns*, the defendant failed to meet his burden to introduce sufficient evidence to warrant a hearing on a juror's potential bias. *Id.* at 103. In *Towns*, our supreme court considered what had been established during *voir dire and* the defendant's new evidence he alleged demonstrated a juror's bias. *Id.* The court concluded that the defendant's *new evidence* "lack[ed] significance when viewed with the facts which were established during *voir dire*." *Id.* The court found the defendant's new evidence added nothing in the way of establishing juror bias and concluded that the defendant had "failed to offer detailed, nonconjectural evidence supporting a conclusion of juror bias and *** [was] not entitled to an evidentiary hearing upon this issue." *Id.*

¶ 31    In *People v. Witte*, 115 Ill. App. 3d 20 (1983), from which our supreme court drew the "specific, detailed, nonconjectural evidence" standard, there had been "no opportunity furnished [either during *voir dire or* in a posttrial hearing] to weigh the evidence" of a juror's potential bias.  See *Witte*, 115 Ill. App. 3d at 29.  The court found that it would be "unreasonable to conclude that no actual prejudice could have existed where [the] defendant had not been allowed to present any testimony or affidavit which, if believed, would establish juror disqualification." *Id.* at 30.  The *Witte* court found,

> "[w]here a defendant does not learn of facts which might support a finding of partiality by a juror until after a verdict, a post-trial evidentiary hearing may be necessary to permit defendant to prove actual bias.  [Citation.]  The intention of the juror at the time of *voir dire* is, for these purposes, is of little importance if important circumstances remain undisclosed.  [Citation.]  It is, however, incumbent on the movant to introduce or to offer in support of the new trial motion distinct evidence of partiality by affidavit or juror testimony.  [Citation.] In all cases, the allegations must be sufficiently specific, detailed, and nonconjectural so that the fact of prejudice is raised; but any doubt should be resolved in favor of granting the evidentiary hearing.  [Citation.]" *Id.*

¶ 32    The court held that "[a] new trial must be granted when either the juror admits bias [citation] or the trial judge, *after a hearing*, makes the pragmatic judgment that there exists a substantial possibility that the juror has unconsciously favored one side."  (Emphasis added.)  *Id.* at 31, citing *McCoy v. Goldston*, 652 F.2d 654, 659 (6th Cir. 1981).  Regarding the requirement for a hearing, the *Witte* court stated that a hearing would permit counsel "to probe the juror's memory, *** reasons for acting as [they] did, and [their] understanding of the consequences of

[their] actions. A hearing also permits the trial judge to observe the juror's demeanor under cross-examination and to evaluate [their] answers in light of the particular circumstances of the case." (Internal quotation marks and citations omitted.) *Id.* at 31, quoting *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring).

¶ 33 The defendant in *Witte* had filed a posttrial motion raising the issue of a juror's potential partiality toward the prosecution, but the trial court refused to permit the juror or another juror defense counsel had subpoenaed to be called to testify. *Id.* at 28-29. The *Witte* court held that,

> "the hearing on defendant's new trial motion could not be considered a
>
> meaningful inquiry where the trial judge refused to hear testimony on allegations
>
> which, if true, would require a new trial. [Citation.] Moreover, by refusing to
>
> hold an evidentiary hearing on factual issues raised in [the] defendant's motion,
>
> the trial court failed to develop an adequate record upon which to base its finding
>
> of no 'actual prejudice,' rendering meaningful appellate review of its finding of
>
> fact impossible." *Id.* at 30.

¶ 34 The *Witte* court vacated the trial court's judgment denying the defendant's posttrial motion and remanded to the trial court for the purpose of conducting a hearing to ascertain the facts alleged as the basis of the juror's potential bias and the extent to which those facts "may have influenced the juror and the prejudice, if any, to the defendant." *Id.* at 31.

¶ 35 Thus, based on the foregoing we find that the first step in the due process inquiry is whether the defendant came forward with specific, detailed, and nonconjectural evidence of a juror's partiality. *Towns*, 157 Ill. 2d at 102, *Witte*, 115 Ill. App. 3d at 30. The court should examine the evidence to determine if it raises the fact of prejudice and resolve any doubt as to that determination in favor of granting an evidentiary hearing. *Witte*, 115 Ill. App. 3d at 30.

Then, if a hearing is warranted, the trial court must permit the defense to call the potentially biased juror to testify regarding the source of the alleged bias and its potential impact on the juror including specifically whether the facts were prejudicial to the defendant, in addition to other relevant testimony. *Smith*, 455 U.S. at 216, quoting *Remmer*, 347 U.S. at 230; *Witte*, 115 Ill. App. 3d at 30-31.

¶ 36    In this case defendant's postconviction petition alleges defendant "was deprived of his due process rights when the trial judge failed to hold an evidentiary hearing when the potential bias of [a] juror *** was raised in court by trial counsel." The issue raised in defendant's postconviction petition in this case is whether the trial court violated defendant's right to due process by failing to conduct a hearing to determine whether the juror was partial against defendant—the issue is not, we note, whether defendant is entitled to a new trial on that ground. See *Smith*, 455 U.S. at 216 ("[p]reservation of the *opportunity* to prove actual bias is a guarantee of a defendant's right to an impartial jury." (Emphasis added.)), citing *Dennis*, 339 U.S. at 171-72 (1950). See also *Witte*, 115 Ill. App. 3d at 30. ("It is *** incumbent on the movant to introduce or to offer in support of the new trial motion distinct evidence of partiality ***. *** [T]he allegations must be sufficiently specific, detailed, and nonconjectural so that the fact of prejudice is raised; but any doubt should be resolved in favor of granting the evidentiary hearing. [Citation.]").

¶ 37    In *People v. Kuntu*, 188 Ill. 2d 157 (1999), cited by defendant, our supreme court held that "the question of whether a hearing is necessary is determined by" whether the defendant can "produce 'specific, detailed and nonconjectural evidence in support of his position.' [Citation.]" *Id.* at 161, citing *Towns*, 157 Ill. 2d at 102. In *Kuntu*, despite the fact the defendant's posttrial allegations in that case did not provide "conclusive evidence" the juror's relationship with the

prosecutor prejudiced the defendant's right to a fair trial, the posttrial allegations were "sufficiently specific, detailed, and nonconjectural to require the trial court to hold an evidentiary hearing to determine whether such a relationship exists." *Kuntu*, 188 Ill. 2d at 162.

¶ 38     In *Kuntu*, the sole issue considered by the court was whether the case should be remanded for an evidentiary hearing to determine whether the defendant was denied the due process right to an impartial jury by not ascertaining "the relationship between the jury foreman and [the] Cook County State's attorney." See *Kuntu*, 188 Ill. 2d at 159, 161.  In that case, after trial and after the trial court had ruled on the defendant's posttrial motions, the prosecution revealed a letter from the foreman to the State's Attorney. *Id.* at 159-60.  The defendant filed a motion for a new trial which the trial court denied. *Id.* at 160.  The State argued an evidentiary hearing to determine if a relationship existed between the foreman and the State's Attorney was not warranted. *Id.*  Our supreme court rejected the State's argument, finding that due to the failure to conduct a hearing in light of the posttrial evidence of partiality the defendant presented, it did not know whether the defendant was denied his right to a fair tribunal because it did not know what relationship, if any, existed between the foreman and the State's Attorney. *Id.* at 161.  Our supreme court remanded the case for the trial court to conduct an evidentiary hearing into the defendant's claim; *i.e.*, "whether a relationship exists between [the foreman] and State's Attorney ***, and, if such a relationship exists, *whether* that relationship prejudiced [the] defendant's right to a fair trial." (Emphasis added.)  *Id.* at 162.

¶ 39     We note again, our supreme court did not determine that the posttrial allegations in *Kuntu* established prejudice, only that the allegations were sufficient enough that due process required an evidentiary hearing into them. See *id.* at 161 ("the question of whether a hearing is *necessary* is determined by applying the test set forth in [*Towns*.]"  (Emphasis added.)).  Thus, in the

context of this postconviction petition, to survive the second stage, the allegations in the petition not positively rebutted by the record, if proven, must amount to "specific, detailed, and nonconjectural evidence" in support of finding juror partiality. *Towns*, 157 Ill. 2d at 102, *Witte*, 115 Ill. App. 3d at 30. It is the presence or absence of such evidence that determines whether or not an evidentiary hearing into juror partiality "*may* be necessary." (Emphasis added.) *Towns*, 157 Ill. 2d at 102 ("The defendant *** bears the burden to introduce and offer specific, detailed and nonconjectural evidence in support of his position. In the *absence* of such evidence, an evidentiary hearing is *not* warranted. [Citation.]" (Emphases added.)). It stands to reason and precedent that in the *presence* of such evidence, an evidentiary hearing *is* warranted. See *Kuntu*, 188 Ill. 2d at 162 (finding allegations "sufficiently specific, detailed, and nonconjectural to require *** an evidentiary hearing" to determine juror partiality despite holding allegations on their own failed to provide conclusive evidence of juror partiality).

¶ 40　　Applying the foregoing to this case, we find that, construed liberally as we must, the claims in the petition are specific, detailed, and nonconjectural which, if proven, raise the fact of prejudice requiring an evidentiary hearing into the juror's partiality. The petition alleges what information the juror possessed that she should not have—a prior conviction for raping a patron of defendant's prior place of employment where he worked in the same department as the juror—and alleges specifically how the juror may have come to learn about defendant's prior offense that was excluded from the jury—specifically because "one of the jurors who served on his jury had previously worked with [defendant] at [his place of employment in the same department.]" The petition states: "[The juror] had been aware of [defendant's] conviction of aggravated criminal sexual assault of a [patron] of that [business.]" Moreover, in the trial court defendant personally stated to the trial judge, "I think she had knew about my past conviction.

- 17 -

The crime it was allegedly took place at the [place of employment.]" The petition provides detailed information as to how defendant came to learn this information about the juror. Defendant stated he "learned that he had previously worked with [the juror] *** when [defendant's] brother brought the matter to his attention after the trial." Defendant's brother had also worked in the same department for the same employer. Defendant's claims are supported by the affidavit of his brother.

¶ 41     The State argues defendant failed to prove the juror knew him and was partial against him by producing evidence to refute the trial court's determination that the juror did not know or recognize defendant as the person at their workplace who raped a client or to refute the original trial record which, the State claims, "unambiguously shows [the juror] did not know or recognize defendant and shows that she was not aware of his prior conviction." The record evidence on which the State relies includes only the juror's *voir dire* responses and the State's Attorney's Office's one-sided communication with the juror. The State argues this means defendant has failed to satisfy the Act's requirement to show the allegations are capable of independent corroboration by attaching to the petition affidavits or other evidence. See *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002).

¶ 42     The State is correct that "[a] postconviction petitioner is entitled to an evidentiary hearing only when the allegations in the petition supported by 'affidavits, records, or other evidence' (725 ILCS 5/122-2 (West 2014)) make a substantial showing of a deprivation of rights under either the United States or Illinois Constitutions or both." *Dupree*, 2018 IL 122307, ¶ 28. "The purpose for requiring 'affidavits, records, or other evidence' is to establish that the allegations in a postconviction petition are capable of objective or independent corroboration. [Citation.] The 'affidavits and exhibits which accompany a petition must identify with reasonable certainty the

sources, character, and availability of the alleged evidence supporting the petition's allegations.' [Citation.]" *People v. Williams*, 2016 IL App (1st) 133459, ¶ 30. We review "the entire postconviction petition and all supporting documents, in light of the trial record, to determine whether the petitioner has made a substantial showing of a constitutional violation." *Hobson*, 2014 IL App (1st) 110585, ¶ 20. "If the allegations of the petition, supported where appropriate by the trial record, affidavits or other evidence, make a substantial showing of a violation of constitutional rights, the trial court must hold an evidentiary hearing on the petition." *People v. Hobson*, 2014 IL App (1st) 110585, ¶ 19. "At the dismissal stage of a post-conviction proceeding, all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *Coleman*, 183 Ill. 2d at 385. "The question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act." *Id.*

¶ 43    The State argues defendant needed the affidavit of the juror admitting she did not answer questions truthfully during the *voir dire* before the petition could proceed to an evidentiary hearing. We reject the State's argument. One purpose of the hearing is to determine the juror's veracity. We note again that the allegation in the petition is that the trial court was required to conduct a hearing that comported with due process into defendant's *claim* of juror partiality. As stated above, defendant's allegation the juror worked with defendant at the same hotel in the same department when defendant was convicted of a rape which occurred at that very same hotel is supported by his brother's affidavit. At the second stage of postconviction proceedings "[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations. [Citation.] The Act contemplates that such determinations will be made at the

evidentiary stage, not the dismissal stage, of the litigation." (Internal quotation marks omitted.) *Dupree*, 2018 IL 122307, ¶ 29. Whether the juror recognized or knew defendant or knew about his prior conviction necessarily requires fact-finding and a credibility determination.

¶ 44 Defendant argues the allegations in the petition are not rebutted by the record. Specifically, defendant argues that "[t]o any extent that [the juror's] *voir dire* testimony can be seen as rebutting [defendant's] claims, this court noted that the trial court's failure to hold an evidentiary hearing 'to determine *** whether [the] juror *** answered falsely on *voir dire*,' [(*Hanks II*, 335 Ill. App. 3d at 903)] actually supported a finding that appellate counsel was ineffective for failing to raise this issue." We have no need to attempt to reconstrue the meaning of our prior finding that there "was no determination made as to whether [the] juror *** answered falsely on *voir dire* as she never provided a sworn statement nor was she subject to any adversarial testing" (*id.*) in this context. Independent of our prior holding, we find that the fact the juror may have known about the conviction is not positively refuted by the existing record for purposes of defendant's claim his due process right was violated.

> "The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing *like that ordered in Remmer and held in this case*." (Emphasis added.) *Smith*, 455 U.S. at 217.

¶ 45     Neither the *voir dire* nor the State's *ex parte* examination of the juror in this case comported with the requirements of due process. Neither process was designed or did "probe the juror's memory." *Witte*, 115 Ill. App. 3d at 31, quoting *Smith*, 455 U.S. at 209 (O'Connor J., concurring). The juror was not subject to cross-examination, during which the trial judge could "evaluate [her] answers" and gauge her credibility, to determine the circumstances and the impact thereof and whether they were prejudicial; nor was defendant permitted to participate in the State's *ex parte* examination of the juror. *Id.*; *Smith*, 455 U.S. at 216 ("I believe that in most instances a postconviction hearing will be adequate to determine whether a juror is biased. *** I am concerned, however, that in certain instances a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice.") In this case, the trial judge's *voir dire* and the State's *ex parte* interrogation standing alone were "inadequate for uncovering [the] juror's [potential] biases." Further, the State's reliance on *Towns* is misplaced. In this case, defendant does not rely on "the mere fact that they had the same employer." As defendant argues in reply, he also relies on "the additional, and much more powerful, fact that 'the same [location]' was also the site of an offense [defendant] was alleged to have committed, and that crime was identical to the offense for which [the juror] later found [defendant] to be guilty." Moreover, *Towns* supports our finding the information established below fails to satisfy due process. Our supreme court did not rely on what "had already been established in *voir dire*." *Towns*, 157 Ill. 2d at 103. The court examined the evidence of alleged juror partiality and determined that the *new* evidence "adds nothing." *Id.* The court found that the new evidence lacked significance when viewed "with" the facts which were established during *voir dire*. *Id.*

¶ 46    Regardless, the issue in this appeal is not whether defendant has made a substantial showing that his constitutional rights were violated because the trial court allowed an impartial juror to decide his case.  The only issue now is whether due process required the trial court to conduct a hearing to determine whether the juror was biased against defendant.  If defendant came forward with specific, detailed, nonconjectural evidence of partiality, the trial court was required to conduct a hearing, during which the juror could be cross-examined, to determine what she knew and how it affected her.  At this stage of proceedings defendant is charged only with making a substantial showing that he did come forward with the required specific, detailed, nonconjectural evidence; which he has done.

¶ 47    Defendant's postconviction petition makes a *substantial showing* the trial court erred by failing to conduct an evidentiary hearing to protect defendant's constitutional right that his case be heard by an impartial jury and his appellate counsel was deficient for failing to raise the issue. Defendant was not required to prove that his jury was not impartial, but in his pleadings defendant has raised specific evidence to raise the *question* of potential juror partiality.  Because there is "nothing improper with partial dismissals at the second stage" (*People v. Lara*, 317 Ill. App. 3d 905, 908 (2000)), we also briefly note that because defendant's claim underlying his postconviction claim of ineffective assistance of appellate counsel has merit we will allow that claim to proceed as well.  See *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 54 ("A defendant raising a claim concerning appellate counsel 'must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful.'  [Citation.]"), *Hanks II*, 335 Ill. App. 3d at 900-01 ("Appellate counsel's representation fell below the objective standard of reasonableness"),

*People v. Dixon*, 2019 IL App (1st) 160443, ¶ 46 ("Prejudice from appellate counsel's deficient performance depends entirely on the merits of the underlying legal question.").

¶ 48     The trial court's judgment granting the State's motion to dismiss is, therefore, reversed.

¶ 49     Finally, we must take note that the offense in this case occurred in 1992 and defendant went to trial in this matter in 1997.  In 2002, another panel of this court reversed the summary dismissal of defendant's petition for postconviction relief and remanded for second-stage postconviction proceedings.  Defendant's postconviction counsel did not file the amended petition for postconviction relief that is the subject of this appeal until 2016.  The trial court did not grant the State's motion to dismiss at the second stage until 2017.  At this point, 28 years have elapsed since the crime occurred and 18 years have passed since this court moved defendant's petition for postconviction relief past the first stage.  This is an intolerable position for all parties involved in this case.  There is little information as to what has occurred during these periods of delay and we make no judgments as to where the blame lies.  Nor do we suggest or imply what the outcome of the third-stage evidentiary hearing might be; nonetheless, we are obligated to act to prevent further unnecessary delay.

¶ 50     This court "is empowered under Rule 615(b) to remand a cause for a hearing on a particular matter while retaining jurisdiction." *People v. Garrett*, 139 Ill. 2d 189, 195 (1990).  In the exercise of that power, we retain jurisdiction of this matter; we remand the matter to the trial court to conduct a third-stage evidentiary hearing; we order the trial court, the attorneys on appeal, and the trial court attorneys to expedite third-stage proceedings in this case and to *complete* those proceedings—including the trial court's order—within 180 days of the date of this order and mandate; and we issue the mandate *instanter* without prejudice to the right to file a petition for rehearing.

¶ 51                                    CONCLUSION

¶ 52    For the foregoing reasons, jurisdiction of this case is retained in this court, the judgment

of the circuit court of Cook County is reversed, and the cause is remanded with instructions.

¶ 53    Reversed and remanded with instructions; jurisdiction retained.